John A. Pearce (Cal. Bar # 184678)
Nathan D. Thomas (Cal. Bar # 234931)
JONES, WALDO, HOLBROOK & McDONOUGH, P.C.
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537
jpearce@joneswaldo.com
nthomas@joneswaldo.com

*Attorneys for Plaintiff*

FILED

09 AUG 25 PM 3: 40

ORIGINAL

BY: _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MYRON W. WENTZ, an individual, | : | **COMPLAINT** |
| Plaintiff, | : | |
| v. | : | Case No.: |
| ARGYLL BIOTECHNOLOGIES, a Delaware limited liability company, IMMUNOSYN CORPORATION, a Delaware corporation, and DOES 1-10 | : | '09 CV 1 8 4 1 H  NLS |
| | : | Judge |
| | : | DEMAND FOR JURY TRIAL |
| Defendants. | : | |

Plaintiff Myron W. Wentz, by and through its undersigned counsel of record, states the following for its Complaint against defendants Argyll Biotechnologies, LLC ("Argyll"), Immunosyn Corporation ("Immunosyn"), and Does 1 through 10 as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Myron W. Wentz is a citizen of Saint Kitts and Nevis, with his residency in Playa de Rosarito, Baja California, Mexico.

2.      Upon information and belief, Defendant Argyll is a limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business located in La Jolla, California.

898837.2

3.      Upon information and belief, the members of Defendant Argyll are all citizens and residents of the State of California.

4.      Upon information and belief, Defendant Immunosyn is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business located in La Jolla, California.

5.      Upon information and belief, Defendant Argyll is the controlling shareholder of Defendant Immunosyn, with Douglas A. McClain, Jr. being both a controlling member of Defendant Argyll and a director and an officer of Defendant Immunosyn.

6.      Upon information and belief, the true names or capacities, whether individual, corporate, or otherwise, of defendants named herein as John Does 1 through 10 are unknown to Plaintiff Wentz, who sues such defendants by such fictitious names (collectively the "John Doe Defendants").  On information and belief, the John Doe Defendants are various corporations and individuals, who participated in some and/or all of the unlawful acts complained of herein and who performed acts and made statement in furtherance thereof.  Plaintiff Wentz will amend this complaint to show the unknown John Doe Defendants' true names and capacities upon ascertainment thereof.

7.      The matter in controversy exceeds $75,000, exclusive of interests and costs, and this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §1332(a).

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and the express agreement of the parties.

## GENERAL ALLEGATIONS

9.      Upon information and belief, as of March 13, 2008, Defendant Argyll was the record beneficial owner of 145,763,798 shares of common stock issued by Defendant Immunosyn, representing approximately 53% of Defendant Immunosyn's issued and outstanding shares of common stock at that time.

10.     On or about March 13, 2008, Defendant Argyll and Plaintiff Wentz entered into a Stock Purchase and Option Agreement (the "Agreement") for the purchase by Plaintiff Wentz of 400,000 shares of stock of Defendant Immunosyn that were then owned by Defendant Argyll for

- 2 -
COMPLAINT

1 a purchase price of $2,000,000.00 or $5.00 per share. A true and correct copy of the Agreement

2 is attached hereto as Exhibit 1.

3       11.    Pursuant to the Agreement, the shares were to be delivered to Plaintiff Wentz "free

4 and clear of any lien, charge or other encumbrance." Agreement at § 4.2.

5       12.    Pursuant to the Agreement, the shares were to be fully "transferable and tradable."

6 Agreement at § 4.4.

7       13.    Pursuant to the Agreement, Defendant Argyll delivered to Plaintiff Wentz the

8 agreed-upon 400,000 shares of common stock of Defendant Immunosyn, and Plaintiff Wentz

9 made the required payment of $2,000,000.00 or $5.00 per share.

10       14.    Section 2.3 of the Agreement provided that if, as of the one-year anniversary of the

11 Agreement, (*i.e.,* March 13, 2009), the closing price of the common stock of Defendant

12 Immunosyn on the principal exchange on which it was traded "did not equal or exceed US$5.00

13 per share . . . [Defendant Argyll] shall deliver to [Plaintiff Wentz] within five (5) business days

14 thereafter a certificate or certificates evidencing such additional number of shares of Common

15 Stock . . . determined by dividing $2,000,000 by the closing price of the Common Stock of

16 [Defendant Immunosyn] . . . and subtracting from such amount 400,000 . . ., such [shares] to

17 be registered in [Plaintiff Wentz's] name." Agreement at §2.3.

18       15.    Upon information and belief, on March 13, 2009, the one-year anniversary of the

19 Agreement, the closing price of the common stock of Defendant Immunosyn on the principal

20 exchange on which it was traded was $0.13 per share.

21       16.    On or about March 20, 2009—shortly after the one-year anniversary of the

22 Agreement—Plaintiff Wentz and Defendant Argyll executed a First Amendment to Stock

23 Purchase and Option Agreement (the "First Amendment"), which clarified Defendant Argyll's

24 obligation under Section 2.3 of the Agreement, with reference to the $0.13 closing price of the

25 common stock of Defendant Immunosyn on March 13, 2009, the one-year anniversary of the

26 Agreement. A true and correct copy of the First Amendment is attached hereto as Exhibit 2.

27       17.    By the First Amendment, the Defendant Argyll and Plaintiff Wentz amended

28 Section 2.3 of the Agreement to provide that, on or before April 20, 2009, Defendant Argyll

898837.2

1 would deliver to Plaintiff Wentz 14,984,615 shares of common stock of Defendant Immunosyn to

2 be registered in Plaintiff Wentz's name. No other substantive provisions of the Agreement were

3 modified by the First Amendment.

4      18.     On or about May 25, 2009, Defendant Argyll delivered to Plaintiff Wentz a single

5 certificate for 14,984,615 shares of common stock of Defendant Immunosyn (the "Make Whole

6 Shares"), which was not registered in Plaintiff Wentz's name, as required by the Agreement, but

7 rather which was registered in the name of Defendant Argyll, together with a separate transfer

8 endorsement, which was presumably executed by an authorized agent of Defendant Argyll.

9      19.     Moreover, this single stock certificate bore a legend restricting the free

10 transferability of the same in violation of the Agreement.

11      20.     Plaintiff Wentz cannot enjoy full ownership of the shares until they are registered

12 in his name as the Agreement and First Amendment require. Moreover, Plaintiff Wentz cannot

13 enjoy full ownership of the shares until the restrictive legend is removed, as required by the

14 Agreement.

15      21.     Plaintiff Wentz approached the designated transfer agent for Defendant

16 Immunosyn's common stock on or about June 17, 2009, to seek registration of the Make Whole

17 Shares in Plaintiff Wentz's name and the removal of the restrictive legend.

18      22.     On or about June 30, 2009, the transfer agent informed Plaintiff Wentz that the

19 ownership of the Make Whole Shares could not be changed and that the restrictive legend could

20 not be removed without a resolution from Defendant Immunosyn.

21      23.     Plaintiff Wentz has, on repeated occasions, sought a resolution or other action

22 from Defendant Immunosyn and the transfer agent to effectuate the transfer of the Make Whole

23 Shares by Defendant Argyll to Plaintiff Wentz and the removal of the restrictive legend.

24      24.     To date, the required resolution or other appropriate authorization sufficient to

25 satisfy the transfer agent in this regard has not been provided by Defendant Immunosyn.

26      25.     To date, Plaintiff Wentz has not received from Defendant Argyll the 14,984,615

27 "Make Whole Shares" of Defendant Immunosyn registered in Plaintiff Wentz's name and without

28 the restrictive legend.

COMPLAINT

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Breach of Contract/Damages – Defendant Argyll)

26.     Plaintiff Wentz realleges and incorporates the preceding paragraphs as if fully set forth herein.

27.     Plaintiff Wentz and Defendant Argyll entered into the Agreement and First Amendment which required that Defendant Argyll transfer 14,984,615 shares of common stock in Defendant Immunosyn to Plaintiff Wentz on or before April 20, 2009, to be registered in Plaintiff Wentz's name and without the restrictive legend.

28.     Plaintiff Wentz has fully performed his obligations under the Agreement and the First Amendment.

29.     Defendant Argyll has breached the Agreement and the First Amendment by failing to provide the 14,984,615 shares of common stock of Defendant Immunosyn to Plaintiff Wentz registered in his name and without the restrictive legend.

30.     By reason of Defendant Argyll's breach of contract, Plaintiff Wentz has also suffered consequential damages in an amount to be proved at trial.

31.     Pursuant to Section 4.5 of the Agreement, Plaintiff Wentz is entitled to indemnification for the attorneys' fees expended by reason of Defendant Argyll's failure to perform.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract/Specific Performance – Defendant Argyll)

32.     Plaintiff Wentz realleges and incorporates the preceding paragraphs as if fully set forth herein.

33.     Plaintiff Wentz and Defendant Argyll entered into the Agreement and First Amendment which required that Defendant Argyll transfer 14,984,615 shares of common stock in Defendant Immunosyn to Plaintiff Wentz on or before April 20, 2009, to be registered in Plaintiff Wentz's name and without the restrictive legend.

- 5 -

COMPLAINT

34. Plaintiff Wentz has fully performed his obligations under the Agreement and the First Amendment.

35. Defendant Argyll has breached the Agreement and the First Amendment by failing to provide the 14,984,615 shares of common stock of Defendant Immunosyn to Plaintiff Wentz to be registered in his name and without the restrictive legend.

36. Upon information and belief, Defendant Argyll presently possesses in excess of 100,000,000 shares of common stock of Defendant Immunosyn, which it can freely transfer in satisfaction of its obligations under the Agreement and the First Amendment, thereby rendering specific performance of Defendant Argyll's obligation just and reasonable to Defendant Argyll.

37. By reason of Defendant Argyll's breach of contract, Plaintiff Wentz seeks relief in the form of a judgment mandating that Defendant Argyll perform the Agreement and First Amendment through transfer of the agreed-upon 14,984,615 shares of common stock of Defendant Immunosyn to Plaintiff Wentz to be registered in his name and without the restrictive legend.

38. Pursuant to Section 4.5 of the Agreement, Plaintiff Wentz is entitled to indemnification for the attorneys' fees expended by reason of Defendant Argyll's failure to perform.

### THIRD CLAIM FOR RELIEF

**(Tortious Interference with Contractual Relationship – Defendant Immunosyn)**

39. Plaintiff Wentz realleges and incorporates the preceding paragraphs as if fully set forth herein.

40. Defendant Argyll is the controlling shareholder of Defendant Immunosyn.

41. Upon information and belief, Defendant Immunosyn knew of the Agreement between Plaintiff Wentz and Defendant Argyll and the First Amendment thereto and, in fact, had access to the same.

42. Upon information and belief, Defendant Immunosyn knew that Defendant Argyll was obligated to provide 14,984,615 shares of common stock of Defendant Immunosyn to Plaintiff Wentz to be registered in his name and without the restrictive legend.

- 6 -
COMPLAINT

898837.2

43.     Upon information and belief, Defendant Immunosyn knew that Defendant Argyll provided to Plaintiff Wentz a single certificate for 14,984,615 shares of common stock of Defendant Immunosyn, together with a separate transfer endorsement by an agent of Defendant Argyll, which would require Plaintiff Wentz thereafter to submit such certificate to Defendant Immunosyn's transfer agent in order to receive a certificate registered in the name of Plaintiff Wentz and without a restrictive legend.

44.     Upon information and belief, Defendant Immunosyn knew that its transfer agent would refuse to issue a certificate to Plaintiff Wentz in such a large number of shares without requiring the consent of Defendant Immunosyn to the same.

45.     Plaintiff Wentz has made demand upon Defendant Immunosyn for execution of a resolution allowing the transfer agent to register the Make Whole Shares in Plaintiff Wentz's name and to remove the restrictive legend therefrom.

46.     Defendant Immunosyn has not provided the resolution required to allow the transfer agent to effectuate the transfer of the Make Whole Shares to Plaintiff Wentz and thereby has deprived him of the benefit of the Agreement and the First Amendment thereto.

47.     Upon information and belief, in failing to provide the resolution required to allow the transfer agent to effectuate the transfer of the Make Whole Shares to Plaintiff Wentz, Defendant Immunosyn knew or was substantially certain that such action would disrupt the performance of the Agreement and First Amendment.

48.     By failing to provide the necessary documentation, Defendant Immunosyn has injured Plaintiff Wentz by preventing him from obtaining the benefits under the Agreement and the First Amendment.

49.     Based upon Defendant Immunosyn's interference with the parties' performance of the Agreement and the First Amendment thereto, Plaintiff Wentz is entitled to judgment against Defendant Immunosyn in an amount to be determined at trial, but not less than $1,948,000, plus pre- and post-judgment interest as allowed by law, as well as consequential damages.

50.     Additionally, in failing to respond to Plaintiff Wentz's demand for a resolution to effectuate delivery of the Make Whole Shares with knowledge, Defendant Immunosyn acted

- 7 -

COMPLAINT

1  willfully and maliciously, sufficient to warrant an award of punitive damages in an amount to be

2  determined at trial.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiff Wentz prays for judgment in his favor and for the following

5  relief:

6  1.  On Plaintiff Wentz's first claim for relief for breach of contract, judgment against

7  Defendant Argyll in the amount of $1,948,000, plus pre- and post-judgment interest as allowed by

8  law, as well as consequential damages and attorneys' fees in an amount to be proved at trial.

9  2.  On Plaintiff Wentz's second claim for relief for breach of contract, an order of the

10  Court compelling Defendant Argyll to provide 14,984,615 shares of common stock of Defendant

11  Immunosyn to Plaintiff Wentz registered in his name and attorneys' fees in an amount to be

12  proven at trial.

13  3.  On Plaintiff Wentz's third claim for relief for interference with contractual

14  relations, judgment against Defendant Immunosyn in the amount of $1,948,000, plus pre- and

15  post-judgment interest as allowed by law, and an award of punitive and consequential damages to

16  be determined at trial.

17  4.  Costs and attorneys' fees.

18  5.  Such other relief as the Court deems just and proper.

19

20  RESPECTFULLY SUBMITTED this 24 day of August, 2009.

21  JONES WALDO HOLBROOK & McDONOUGH PC

22

23  By: _____

24  Jonathan A. Pearce
Nathan D. Thomas

25  *Attorneys for Plaintiff*

26

27

28

- 8 -
COMPLAINT

Exhibits to Complaint

| Exhibit Number | Description |
|---|---|
| 1. | True and Correct Copy of the Stock Purchase and Option Agreement |
| 2. | First Amendment to Stock Purchase and Option Agreement |

**EXHIBIT 1**

## STOCK PURCHASE AND OPTION AGREEMENT

**THIS STOCK PURCHASE AND OPTION AGREEMENT** (this "*Agreement*") is made and entered into this 13th day of March, 2008 by and between Argyll Biotechnologies LLC, a Delaware limited liability company domiciled in California with its principal executive offices located at 4225 Executive Square, Suite 260, La Jolla, California 92037 (the "*Stockholder*"), and Myron W. Wentz, Ph.D., an individual resident of Mexico with a business address at Sanoviv Medical Institute, Playas de Rosarito, Km 39, Baja California, Mexico 22712 (the "*Purchaser*").

WHEREAS, the Stockholder is the record and beneficial owner of 145,763,798 shares of common, par value $.0001 per share (the "*Common Stock*"), issued by Immunosyn Corporation, a Delaware corporation domiciled in California (the "*Company*"), representing approximately 53.589% of the Company's issued and outstanding shares of Common Stock; and

WHEREAS, on the terms and subject to the conditions set forth herein, the Purchaser desires to acquire from the Stockholder, and the Stockholder desires to sell to the Purchaser, certain of its shares of Company Common Stock owned by the Stockholder.

NOW, THEREFORE, the parties hereto, intending to be legally bound hereby, agree as follows:

### ARTICLE I
### Purchase and Sale of the Shares

**1.1     Purchase and Sale of the Shares.** On the Closing (defined below), the Stockholder shall sell and transfer to the Purchaser and the Purchaser shall purchase and acquire from the Stockholder, 400,000 shares of the Company's Common Stock (the "*Shares*") in exchange for the Purchase Price (defined below).

### ARTICLE II
### Purchase Price

**2.1     Purchase Price.** In consideration for the Shares, the Purchaser shall deliver to the Stockholder the aggregate sum of US$2,000,000 (or US$5.00 per share) via wire transfer of immediately available funds (the "*Purchase Price*") at the closing (the "*Closing*") to be held on the date hereof (the "*Closing Date*").

**2.2     Delivery of the Shares.** At the Closing, the Stockholder shall deliver to the Purchaser a certificate or certificates evidencing the Shares registered in the Purchaser's name or in the name of such affiliate designee as shall be identified by the Purchaser.

**2.3     Adjustment of the Shares.** If the closing price of the Common Stock of the Company on the principal exchange on which it is traded does not equal or exceed US$5.00 per share on the one year anniversary of the Closing Date (or the next business day if the one year anniversary of the Closing Date does not fall on a business day), the Stockholder shall deliver to the Purchaser within five (5) business days thereafter a certificate or certificates evidencing such additional number of shares of Common Stock (the "*Make Whole Shares*") determined by dividing $2,000,000 by the closing price of the Common Stock of the Company on the principal

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

exchange on which it is traded on the one year anniversary of the Closing Date and subtracting from such amount 400,000 (the number of Shares purchased on the Closing Date hereunder), such Make Whole Shares to be registered in the Purchaser's name.

## ARTICLE III
### Conditions On Performance

3.1     **Conditions to the Purchaser's Obligations.** The obligation of the Purchaser to consummate the transactions contemplated by this Agreement is subject to the satisfaction of the following conditions as of the Closing Date:

(a)     the representations and warranties set forth in Article IV of this Agreement shall be true and correct in all material respects as of the Closing Date; and

(b)     the purchase of the Shares by the Purchaser hereunder shall not be prohibited by any applicable law or governmental regulation, and shall not subject the Purchaser to any penalty or liability under or pursuant to any applicable law or governmental regulation.

Any condition may be waived by the Purchaser, provided that no such waiver shall be effective against the Purchaser unless it is set forth in a writing executed by the Purchaser.

3.2     **Conditions to the Stockholder's Obligation.** The obligation of the Stockholder to consummate the transaction contemplated by this Agreement is subject to satisfaction of the following conditions as of the Closing Date:

(a)     the representations and warranties set forth in Article V of this Agreement shall be true and correct in all material respects as of the Closing Date;

(b)     the sale of the Shares by the Stockholder hereunder shall not be prohibited by any applicable law or governmental regulation, and shall not subject the Stockholder to any penalty, liability or other materially adverse condition under or pursuant to any applicable law or governmental regulation; and

(c)     no action, suit, or proceeding shall be pending before any court or quasi-judicial or administrative agency of any federal, state, or local jurisdiction or before any arbitrator wherein an unfavorable judgment, decree, injunction, order or ruling would prevent the performance of this Agreement or any of the transactions contemplated hereby, declare unlawful the transactions contemplated by this Agreement, cause such transactions to be rescinded or materially and adversely affect the right of the Stockholder to sell the Shares, and no judgment, decree, injunction, order or ruling shall have been entered which has any of the foregoing effects.

Any condition may be waived by the Stockholder, provided that no such waiver shall be effective against the Stockholder unless it is set forth in a writing executed by the Stockholder.

## ARTICLE IV
### Representations and Warranties of the Stockholder

The Stockholder makes the following representations and warranties, which

2

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

representations and warranties shall survive the Closing.

    **4.1**    **Execution and Delivery.** The Stockholder has duly executed and delivered this Agreement. This Agreement is valid and binding upon the Stockholder, enforceable against the Stockholder in accordance with it terms. The Stockholder represents that it has full power and authority to enter into this Agreement and perform its obligations hereunder. The Stockholder has the ability to sell the Shares and perform the Stockholder's obligations under this Agreement.

    **4.2**    **Title to Shares.** The Stockholder is the record and beneficial owner of, and has full right, title and interest in and to, the Shares, free and clear of any lien, charge or encumbrance. Except for a Sales Plan pursuant to Rule 10b5-1 under the Securities Exchange Act of 1934, as amended, the Shares are not subject to any voting trust agreement or other contract, agreement, arrangement, commitment or understanding, including any such agreement, arrangement, commitment or understanding restricting or otherwise relating to the voting, dividend rights or disposition of the Shares. At the Closing, the Stockholder will transfer and deliver to the Purchaser valid title to, and all of the Stockholder's right, title and interest in and to, the Shares, free and clear of any lien, charge or other encumbrance or any claim in respect of the Shares.

    **4.3**    **Absence of Litigation.** There is no action, suit or proceeding pending or, to the Stockholder's knowledge, threatened against or affecting the Stockholder or the Stockholder's property before any court, arbitrator or governmental body, agency or official which in any manner involves the Shares owned by the Stockholder or draws into question the validity of this Agreement or the Shares.

    **4.4**    **Rule 144.** The Stockholder is selling the Shares to the Purchaser in compliance with Rule 144 under the federal securities laws. As a result such Shares will be full transferable and tradable in the hands of the Purchaser.

    **4.5**    **Indemnification.** The Stockholder agrees to indemnify and hold harmless the Purchaser and/or his permitted assigns, from and against any and all damages, losses, liability, claims, costs and expenses whatsoever (including reasonable attorneys' fees) which the Purchaser may incur by reason of the failure of the Stockholder to fulfill any of the terms or conditions of this Agreement, or by reason of any breach of the representations and warranties or covenants made by the Stockholder herein or in any document provided by the Stockholder to the Purchaser in connection with the transaction contemplated hereby.

    **4.6**    **Survival.** The representations and warranties of the Stockholder set forth in this Agreement shall survive the execution of this Agreement and the transactions contemplated thereby.

## ARTICLE V
### Representations and Warranties of the Purchaser

    The Purchaser makes the following representations and warranties, which representations and warranties shall survive the Closing.

3

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

**5.1   Binding Obligation.** This Agreement has been duly executed and delivered by the Purchaser and is a valid and binding obligation of the Purchaser, enforceable against the Purchaser in accordance with its terms. The Purchaser represents that he has full power and authority to enter into this Agreement and perform his obligations hereunder.

**5.2   Public Information.** The Purchaser acknowledges receipt and review of the Company's Annual Report on Form 10-KSB for the fiscal year ended December 31, 2006 and the Company's Quarterly Reports on Form 10-QSB for the fiscal quarters ended March 31, 2006, June 30, 2006 and September 30, 2006 together with certain Current Reports on Form 8-K all filed with the SEC, prior to the Purchaser entering into this Agreement. The Purchaser acknowledges that, to the extent it receives conflicting information concerning the Company, the information in the public filings referred to above shall govern. The Purchaser acknowledges receipt and review of the Prospectus, dated January 4, 2007, concerning the registration with the United States Securities and Exchange Commission (Registration no. 333-137881) for the sale of the Shares which is not current but is in the process of being updated to include current financial and other information.

**5.3   Disclosure of Information.** The Purchaser has had an opportunity to discuss the Company's business, management and financial affairs with the Company's management and the Stockholder. The Purchaser has also had an opportunity to ask questions of officers of the Company and the Stockholder, which questions were answered to the Purchaser's satisfaction. The Purchaser understands that such discussions, as well as any written information issued by the Company, were intended to describe certain aspects of the Company's business and prospects but were not an exhaustive description. The Purchaser has undertaken and completed its review and examination of the books and records of the Company and conducted its own due diligence and investigation in connection with its proposed purchase of the Shares. The Purchaser acknowledges that Regulation FD, as promulgated by the Securities and Exchange Commission under the Securities Act of 1933, as amended, and the Securities Exchange Act of 1934, as amended, is applicable to any material, non-public information provided or disclosed to the Purchaser in connection with this transaction. Accordingly, the Purchaser agrees to hold any such information in the strictest confidence and agrees not to disclose or use, or permit others to disclose or use, such information until such information has been disclosed by the Company to the public. The Purchaser further agrees that it will not resell or otherwise transfer any of the Shares until such information has been disclosed by the Company to the public.

**5.4   Investment Experience; Accredited Investor.** The Purchaser is an "accredited investor" as defined in Rule 501 of Regulation D under the Securities Act of 1933, as amended, and the Purchaser has the knowledge, sophistication and experience necessary in financial, tax, and business matters so as to enable the Purchaser to utilize the information made available to the Purchaser by the Stockholder and the Company to evaluate the merits and risks of this investment in the Shares and to make an informed investment decision. The Purchaser is not relying on the Stockholder, the Company, any of their respective executives, or any of their counsel, agents, or employees or any other person or entity with respect to the legal, tax, and other economic considerations of the Purchaser in making this investment in the Shares, other than the Purchaser's own advisors. Prior to signing this Agreement, the Purchaser made such investigation of the Company, its business, the Shares, and the risks of this investment in the

4

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

Shares as the Purchaser deemed appropriate and consulted with such legal, tax, and other advisors as the Purchaser deemed appropriate, and the Purchaser can bear the economic risk of a total loss of its investment in the Shares. The Purchaser has not been formed for the specific purpose of acquiring the Shares.

5.5    **Purchase Entirely For Purchaser's Own Account.** This Agreement is made with the Purchaser in reliance upon the Purchaser's representations to the Stockholder. By entering into this Agreement, the Purchaser hereby confirms that the Shares to be acquired by the Purchaser will be acquired for investment for the Purchaser's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof except in compliance with all applicable securities laws, that no other person or entity has a direct or indirect beneficial interest in the Shares being acquired by the Purchaser, and that the Purchaser has no present intention of selling, granting any participation in, or otherwise distributing the same. However, notwithstanding the foregoing, the Purchaser may convey the Shares to be acquired to an affiliated designee as hereinafter defined.

5.6    **Privately Negotiated Sale.** The Purchaser acknowledges the pre-existing professional relationship that existed between its principals and executive officers of the Stockholder and the Company and states that, to the best of his knowledge and belief, no public advertisement or general solicitation was employed in connection with the proposed transaction and that the terms and conditions of this Agreement have been negotiated by the parties on an arms' length basis. By executing this Agreement, the Purchaser further represents that the Purchaser does not presently have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations to such person or to any third person, with respect to any of the Shares.

5.7    **Compliance With U.S. Law.** (a) The Purchaser represents and warrants that: (i) neither the Purchaser or its affiliates is a senior official in the executive, legislative, administrative, military, or judicial branch of a foreign government or a senior executive of a foreign government-owned corporation; (ii) it is not a citizen or resident of, or incorporated, chartered, or otherwise organized under the laws of, a jurisdiction that has been designated under Section 311 or 312 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "*USA Patriot Act*," Pub. L. No. 107-56) as warranting special measures due to money laundering concerns; and (iii) the Purchaser's funds do not originate from, nor will they be routed through, an account maintained at a foreign bank that does not have a physical presence in any country or a bank organized or chartered under the laws of a jurisdiction that has been designated under Section 311 or 312 of the USA Patriot Act as warranting special measures due to money laundering concerns.

(b)    The Purchaser acknowledges and agrees that the purchase or acquisition, directly or indirectly, of the Shares by or on behalf of the following persons or entities (each hereafter a "*Prohibited Investor*") is prohibited: (i) a person or entity whose name appears on the List of Specially Designated Nationals and Blocked Persons maintained by the United States Office of Foreign Assets Control ("*OFAC*"); (ii) a foreign bank that does not have a physical presence in any country; (iii) a person or entity resident in or whose subscription funds are transferred from or through an account in a jurisdiction that has been designated under Section 311 or 312 of the USA Patriot Act as warranting special measures due to money

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

laundering concerns; (iv) a person or entity whose name appears on any other list of prohibited persons and entities as may be mandated by applicable law or regulation; or (v) a person or entity whose name appears on any other list of prohibited persons and entities as may be provided to the Purchaser by the Stockholder. The Purchaser represents, warrants, and covenants that neither the Purchaser, nor any person controlling, controlled by, or under common control with the Purchaser, nor any person having a beneficial interest in the Purchaser, is a Prohibited Investor, and that the Purchaser is not purchasing and will not purchase on behalf of or for the benefit of any Prohibited Investor. The Purchaser agrees to promptly notify the Stockholder of any change in information affecting this representation, warranty, and covenant. The Purchaser acknowledges that if, following the Purchaser's purchase of the Shares, the Stockholder or the Company reasonably believe that the Purchaser is a Prohibited Investor, or has otherwise breached any material representation, warranty, or covenant hereunder, the Stockholder or the Company may be obligated to freeze the Purchaser's investment, either by prohibiting additional investments, declining any redemption requests, and/or segregating the assets constituting the investment in accordance with applicable regulations, or its investment may immediately be redeemed (for the lesser of cost minus distributions of cash and property valued at the fair market value thereof, as determined by the Stockholder or the Company), and the Purchaser shall have no claim against the Stockholder or the Company for any form of damages or liabilities as a result of any of the above-mentioned actions.

(c)     The Purchaser acknowledges that due to applicable money laundering laws and regulations, the Stockholder may require further information or representations from the Purchaser before the proposed transaction can be processed and executed, including, without limitation, further information or representations regarding the identification of the Purchaser and the source(s) of the Purchaser's funds. The Purchaser agrees to promptly provide any information or representations deemed necessary by the Stockholder, in its sole discretion, to comply with the anti-money laundering program.

5.8     **Compliance With Local Law; Purchaser's Domicile.** The Purchaser represents and warrants he is not a citizen or resident of the United States and, accordingly, his purchase of the Shares is not subject to the Blue Sky laws of any state of the United States. The Purchaser confirms that, to the best of his knowledge and belief, no action is required under the laws of any foreign country on the part of the Purchaser (as a result of his citizenship or residency), the Stockholder or the Company in connection with the proposed transaction. Purchaser further agrees to comply with all applicable laws and regulations in each foreign jurisdiction in which he purchases, offers, sells or delivers Shares or has in his possession or distributes any offering material, in all cases at his own expense.

5.9     **Indemnification.** The Purchaser agrees to indemnify and hold harmless the Stockholder, the Company, and their respective officers, directors, and affiliates, from and against any and all damages, losses, liability, claims, costs and expenses whatsoever (including reasonable attorneys' fees) which the indemnified parties may incur by reason of the failure of the Purchaser to fulfill any of the terms or conditions of this Agreement, or by reason of any breach of the representations and warranties or covenants made by the Purchaser herein or in any document provided by the Purchaser to the Stockholder in connection with the transaction contemplated hereby.

6

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

**5.10 Survival.** The representations and warranties of the Purchaser set forth in this Agreement shall survive the execution of this Agreement and the transactions contemplated thereby.

**ARTICLE VI**
**Other Agreements**

**6.1 Option Agreements.** The Stockholder hereby grants to the Purchaser an option (the "*Option*") to purchase up to 800,000 shares of Common Stock of the Company from the Stockholder (the "*Option Shares*") for a exercise price equal to US$6.00 per share(the "*Option Exercise Price*"). The Option may be exercised, in whole or in part, by the Purchaser giving notice of exercise to the Stockholder on or before March 13, 2011. If the Purchaser exercises the Option, the sale by the Stockholder of the Option Shares and the purchase thereof by the Purchaser shall be made on a closing date not later than ten (10) business days after the receipt by the Stockholder of the notice of exercise, shall be based on representations, warranties and agreements of the Stockholder and the Purchaser similar to those contained in this Agreement and shall be subject to terms and conditions similar to those contained in this Agreement. If the Purchaser shall exercise the Option, on the closing date, the Purchaser shall pay to the Stockholder the Option Exercise Price via wire transfer of immediately available funds in exchange for a certificate or certificates evidencing the Option Shares registered in the Purchaser's name. If the Purchaser fails to give notice to the Stockholder of exercise of the Option on or before March 13, 2011, the Option shall terminate.

In addition to the foregoing, the Stockholder hereby grants to the Purchaser the following options (the "*Annual Options*"): (i) an option to purchase 100,000 shares of Common Stock of the Company from the Stockholder for an exercise price equal to US$2.50 per share as of the Closing Date, (ii) an option to purchase 100,000 shares of Common Stock of the Company from the Stockholder for an exercise price equal to US$3.50 per share as of the first anniversary of the Closing Date, (iii) an option to purchase 100,000 shares of Common Stock of the Company from the Stockholder for an exercise price equal to US$4.50 per share as of the second anniversary of the Closing Date, and (iv) an option to purchase 100,000 shares of Common Stock of the Company from the Stockholder for an exercise price equal to US$5.50 per share as of the third anniversary of the closing date (collectively, the "*Annual Option Shares*"). The Annual Options may be exercised, in whole or in part, by the Purchaser giving notice of exercise to the Stockholder on or before the tenth anniversary of the grant date of the Annual Option being exercised. If the Purchaser exercises the Annual Options, the sale by the Stockholder of the Annual Option Shares and the purchase thereof by the Purchaser shall be made on a closing date not later than ten (10) business days after the receipt by the Stockholder of the notice of exercise, shall be based on representations, warranties and agreements of the Stockholder and the Purchaser similar to those contained in this Agreement and shall be subject to terms and conditions similar to those contained in this Agreement. If the Purchaser shall exercise the Annual Option, on the closing date, the Purchaser shall pay to the Stockholder the respective Option Exercise Price via wire transfer of immediately available funds in exchange for a certificate or certificates evidencing the Annual Option Shares registered in the Purchaser's name. If the Purchaser fails to give notice to the Stockholder of exercise of the Annual Options on or before the tenth anniversary of the grant date, the Annual Option shall terminate.

7

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

**6.2   Board Seat; Voting Agreement.** The Stockholder agrees to nominate and/or cause the Purchaser (or his designee) to be elected to the Company's Board of Directors at each annual meeting of stockholders or, if there shall at any time be director classes, at each such meeting at which the Purchaser's director class comes up for election, for so long as the Purchaser owns at least 200,000 shares of the Company's Common Stock, and the Stockholder agrees to vote all, or cause (to the extent within its control) to be voted, all shares of Common Stock of the Company owned or controlled by the Stockholder, directly or indirectly, to be voted, to elect the Purchaser (or his designee) to serve on the Company's Board of Directors for so long as the Purchaser owns at least 200,000 shares of the Company's Common Stock. The Purchaser hereby agrees to serve on the Company's Board of Directors if elected. The Purchaser shall be entitled to receive such compensation for his Board service as may received by other non-employee members of the Company's Board of Directors including without limitation annual fees, meeting attendance fees and annual grants of options to purchase shares of Common Stock of the Company.

**6.3   Reservation of Shares.** After the closing date, the Stockholder shall reserve, maintain and keep available for issuance at all times when the Option or any Annual Options are outstanding, solely for the purpose of permitting the Purchaser to effect the exercise of the Option or Annual Options described in Section 6.1 above, the total number of Option Shares and Annual Option Shares issuable upon exercise of the outstanding Option or Annual Options.

## ARTICLE VII
### Miscellaneous

**7.1   Transaction Expenses.** Each party shall pay its own expenses (including legal fees) incident to the negotiation and preparation of this Agreement and any other documents prepared in connection therewith, and the consummation of the transactions contemplated herein.

**7.2   Entire Agreement.** This Agreement contains the entire agreement of the parties hereto with respect to the purchase of the Shares and the granting of the Option and the Annual Options, and supersedes all prior understandings and agreements (oral or written) of the parties with respect to the subject matter hereof. The parties expressly represent and warrant that in entering into this Agreement they are not relying on any prior representations made by any party concerning the terms, conditions or effects of this Agreement.

**7.3   Severability.** Each provision of this Agreement is intended to be severable from every other provision of the Agreement, and the invalidity or illegality of any provision in this Agreement shall not affect the validity or legality of the other provisions.

**7.4   Execution in Counterpart.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

**7.5   Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflicts of laws principles, and all disputes arising out of or related to interpretation or performance of this Agreement shall be referred exclusively to the federal or state courts having jurisdiction

8

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

over disputes arising in San Diego County, California. Both parties waive all objections to the jurisdiction of said courts for this limited purpose.

7.6 **Confidentiality.** Except as may be required by law, rule or regulation, neither of the Stockholder or the Purchaser or their affiliates, agents or representatives shall disclose to any third party, other than the Company, the subject matter or terms of this Agreement without the prior consent of the other party.

7.7 **Assignment.** Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by either party hereto without the prior consent of the other party. Notwithstanding the foregoing, the Purchaser may, without the prior consent of the Stockholder, assign or transfer, in whole or in part, his rights and obligations under this Agreement to one or more Affiliates. For purposes of this Agreement, the term "Affiliate" means any entity which, directly or indirectly, is controlled by the Purchaser. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether through ownership or otherwise.

9

Exhibit 1

Stock Purchase and Option Agreement
Argyll Biotechnologies LLC

    **7.8**    **Brokerage.** Each party to this Agreement represents and warrants that it has not used or retained a broker, dealer, agent, or finder and that it has not incurred any obligation or liability, contingent or otherwise, to pay a fee, commission, and any other form of remuneration, directly or indirectly, in connection with this Agreement or any transaction contemplated thereby.

    IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the day and year first above written.

**PURCHASER:**

_____
Myron W. Wentz, Ph.D.

Address: 2602C Transportation Avenue
National City, CA 91950

Telephone #: 801-201-8084

**STOCKHOLDER:**

**Argyll Biotechnologies LLC**

By:_____
Name:  James T. Miceli
Title:  CEO

10

Exhibit 1

EXHIBIT C

# FIRST AMENDMENT TO STOCK PURCHASE AND OPTION AGREEMENT

This First Amendment to Stock Purchase and Option Agreement (this "Amendment"), effective as of March 20, 2009, is made by and between Argyll Biotechnologies LLC, a Delaware limited liability company (the "Stockholder"), and Myron W. Wentz, Ph.D., an individual resident of Mexico (the "Purchaser"). Reference herein to a "Party" or the "Parties" shall refer, on the one hand, to the Stockholder, and on the other hand, to the Purchaser. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Agreement.

## RECITALS

WHEREAS, Stockholder and Purchaser entered into that certain Stock Purchase and Option Agreement, dated as of March 13, 2008 (the "Agreement"); and

WHEREAS, the Parties desire to amend the Agreement as provided herein.

## AGREEMENT

NOW, THEREFORE, the Parties, intending to be legally bound, agree as follows:

## ARTICLE 1
## AMENDMENTS

1.1 **Adjustment of the Shares.** Section 2.3 of the Agreement is hereby deleted and restated in its entirety as follows:

> "2.3 **Adjustment of the Shares.** If the closing price of the Common Stock of the Company on the principal exchange on which it is traded does not equal or exceed US$5.00 per share on March 13, 2009, the Stockholder shall deliver to the Purchaser prior to April 20, 2009 a certificate or certificates evidencing such additional number of shares of Common Stock (the "Make Whole Shares") determined by dividing $2,000,000 by the closing price of the Common Stock of the Company on the principal exchange on which it is traded on March 13, 2009 and subtracting from such amount 400,000 (the number of Shares purchased on the Closing Date hereunder), such Make Whole Shares to be registered in the Purchaser's name. The parties acknowledge that the closing price of the Common Stock on March 13, 2009 was $0.13 per share and, accordingly, the Stockholder owes Purchaser a total of 14,984,615 Make Whole Shares in addition to the 400,000 Shares, for a total of 15,384,615 shares."

1.2 **Continuity of Terms.** All the other terms and provisions of the Agreement shall remain in full force and effect.

## ARTICLE 2
## MISCELLANEOUS

2.1 **Entire Agreement.** The Agreement (as amended hereby), including any exhibits and schedules which are attached hereto and thereto, represents the entire understanding of the Parties on the matters discussed herein and therein and supersede all prior agreements, negotiations, draft agreements, and oral communications on the same subject.

2.2    **Counterparts**. This Amendment may be executed in one or more counterparts and via facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

2.3    **Facsimile or PDF Signatures**. The Parties agree that transmission to the other Party of this Amendment with its facsimile or electronic "pdf" signature shall bind the Party transmitting this Amendment thereby in the same manner as if such Party's original signature had been delivered. Without limiting the foregoing, each Party who transmits this Amendment with its facsimile or "pdf" signature covenants to deliver the original thereof to the other Party as soon as possible thereafter.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned have duly executed this First Amendment to Stock Purchase and Option Agreement as of the day and year first above written.

PURCHASER:                          STOCKHOLDER:

                                    ARGYLL BIOTECHNOLOGIES LLC

_____     By: _____
Myron W. Wentz                      Douglas A. McClain, Jr.
                                    President

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Wentz, Myron W.

**DEFENDANTS**
Argyll Biotechnologies, a Delaware limited liability company, Immunosyn Corporation, a Delaware Corporation, and DOES 1-10

**(b)** County of Residence of First Listed Plaintiff __Baja, CA Mexico__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

John A. Pearch
Nathan D. Thomas
Jones Waldo Holbrook & McDonough, PC
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
(801) 521-3200

Attorneys (If Known)

09 AUG 25 PM 3: 40

'09 CV 1 8 4 1  H     NLS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 1  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
|  | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract |  | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
|  |  | ☐ 791 Empl. Ret. Inc. Security Act |  | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 463 Habeas Corpus – Alien Detainee | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | ☐ 465 Other Immigration Actions |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other / ☐ 550 Civil Rights |  |  |  |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332 (a) and 28 U.S.C. § 1391 (a)
Brief description of cause:
Breach of Contract and Tortious Interference with Contractual Relationship

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $1,948,615.00, plus
CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)   JUDGE _____   DOCKET NUMBER _____

DATE   8/24/2009
SIGNATURE OF ATTORNEY OF RECORD   Nathan D. T.

**FOR OFFICE USE ONLY**

RECEIPT # __4552__   AMOUNT __350.__   8/25/09   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

890780.1

(Current as of 2/17/09)

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS004552
Cashier ID: sramirez
Transaction Date: 08/25/2009
Payer Name: JONES WALDO PC
-----------------------------------
CIVIL FILING FEE
 For: MYRON V. ARGYLL BIOTECH.
 Case/Party: D-CAS-3-09-CV-001841-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 190588
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```